UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JAMES A. BERNDT, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:07 CV 607 |
|  | ) |  |
| GOSHEN GENERAL HOSPITAL, | ) |  |
| JAMES DAGUE, POOPALASINGHA | ) |  |
| POOVENDRAN, DAVID | ) |  |
| KORONKIEWICZ, and CURRENT | ) |  |
| PRESIDENT OF THE MEDICAL | ) |  |
| STAFF, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION and ORDER

*Pro se* plaintiff James A. Berndt filed suit against defendants Goshen General Hospital, James Dague, Poopalasingha Poovendran, David Koronkiewicz, and the Current President of the Medical Staff. (DE # 1.) Defendants have moved for summary judgment (DE # 28), plaintiff has responded (DE # 32), and defendants have replied (DE # 33). For the reasons explained below, the court grants the motion in part and denies it in part, and will dismiss this case without prejudice.

### I. BACKGROUND

*A. Parties*

Plaintiff is a medical doctor, trained as an anesthesiologist, but not board certified in that speciality. (DE # 30-2 at 3-7.) He worked at defendant Goshen General Hospital (GGH) located in Goshen, Indiana, for 12 years, from roughly 1994 to 2006. (DE # 32 at 1.) Defendant Dague is the president and CEO of GGH. (DE # 30-3 at 2.)

Defendant Koronkiewicz is a surgeon who works at GGH. (DE # 30-12 at 2.) Defendant Poovendran is a doctor and the managing member of Goshen Anesthesiology, LLC (GA, LLC), a business entity that allegedly has an "exclusive contract" to provide anesthesiologists to GGH. (DE # 30-7 at 1-2.) Defendant "Current President of the Medical Staff" remains unnamed.

*B. Plaintiff's Employment Relationships*

Like many doctors, plaintiff was not paid directly by the hospital, but rather was a "member of the medical staff." (DE # 30-2 at 13-15.) This means that plaintiff treated patients at the hospital, but received payment from each patient's medical insurance company or directly from the patient, not from the hospital. (*Id.* at 23-24.) GGH did supply plaintiff with equipment and supplies to do his job. (*Id.* at 50-51.) Plaintiff never had a written employment contract with any of defendants. (*Id.* at 20-21, 90-91.)

He did have a contract with GA, LLC (DE # 30-7 at 3), although that entity did not pay him, withhold taxes on his behalf, or provide him any insurance coverage or benefits. (DE # 30-2 at 41-42; DE # 30-7 at 2-3.) GA, LLC acted as a funnel for anesthesiologists, enabling them to work at GGH and receiving payment from GGH for providing their services, but not formally employing them. Thus, plaintiff's arrangement with GA, LLC allowed plaintiff to work at the hospital, but he did not receive any compensation from GA, LLC and does not allege that he was directly employed by that entity. (DE # 30-7 at 2; DE # 30-9 at 2.)

Plaintiff did eventually arrange for GA, LLC to bill his patients on his behalf, in exchange for a fee. (DE # 30-7 at 4; DE # 32 at 2.) It also appears that defendant Poovendran, as the managing member of GA, LLC, had some control over the tasks and schedules of the various anesthesiologists he provided to GGH (*see* DE # 30-7 at 3-6), although it appears that another anesthesiologist on the Medical Staff at GGH, a Dr. Horsch, actually made the schedule for anesthesiology cases (DE # 30-2 at 76-77). Dr. Horsch is not a party to this lawsuit.

In the fall of 2005, GA, LLC and GGH amended the contract between them in a way that gave GA, LLC a financial incentive to provide GGH with "Board-certified or Board-eligible" anesthesiologists. (DE # 30-7 at 5.) Plaintiff is not "Board-certified or Board-eligible" in anesthesiology. (DE # 30-2 at 6-7.) Defendant Poovendran attests that he received complaints from physicians, nurses, and people regarding plaintiff's performance. (*Id.*) He alleges that he spoke to plaintiff numerous times about these complaints. (*Id.*)

At some point in time, defendant Poovendran and plaintiff had a discussion where plaintiff indicated that he was dissatisfied with the way Poovendran was scheduling cases. (DE # 30-7 at 6.) Plaintiff allegedly told Poovendran that he would not do any of the cases that he was currently scheduled to do, and that he would no longer take after hours or weekend cases. (*Id.*) Poovendran apparently interpreted plaintiff's statements as a refusal "to do cases" and stopped scheduling him for all anesthesiology cases. (*Id.*) He claims his decision was "also influenced" by the complaints about

3

plaintiff's performance and the fact that he was not "Board-certified or Board-eligible." (*Id.*) Plaintiff handled no cases at GGH after January 2006. (*Id.*)

Plaintiff claims that he asked Poovendran why he was no longer scheduled to handle anesthesiology cases, and was told that it was because too many nurses complained about him. (DE # 32 at 3.)

Regardless of his failure to be scheduled for any anesthesiology cases, plaintiff remained a member of the medical staff at GGH during all of 2006. (DE # 30-2 at 64-65, 114; DE # 30-14 at 2-3.) This membership was set to expire on January 26, 2007, and the bylaws at GGH requires a doctor seeking reappointment to file a written application several months before his or her current appointment ends. (DE # 30-14 at 2, 5.) Plaintiff failed to file a timely application for reappointment, despite GGH sending him several notices. (*Id.* at 3.) He eventually submitted his application on January 31, 2007, after his term of appointment had already expired. (DE # 30-2 at 66-68.) In addition, when he filed his belated application, plaintiff failed to demonstrate that he had current malpractice insurance coverage, which was required by GGH policy. (DE # 30-14 at 4.) Plaintiff was not reappointed to the Medical Staff at GGH, and no one has told him why his application was not approved. (DE # 30-2 at 114.)

*C. Plaintiff's Tremor*

In 1993 or 1994, plaintiff was diagnosed with a tremor in his hands. (DE # 30-2 at 89.) He does not take medication for this condition, is not currently receiving treatment for the tremor, was not on medication when his application for reappointment was

4

denied (*id.* at 80-81), and his tremor has not worsened since 2002 (*id.* at 79). According to plaintiff, at some point in 2003 the president of the medical staff at GGH talked to him about his tremor, relating that other people had some concerns about his condition. (DE # 30-2 at 87-88; DE # 32 at 1-2.) A neurologist then apparently examined him and found him fit to continue working as an anesthesiologist. (DE # 30-2 at 87-88.)

Plaintiff alleges that people would notice his hands shaking, but would never comment on it. (DE # 20-2 at 82, 111-12.) He admits that no patient ever refused treatment from him because of the tremor. (*Id.* at 82,110-11.) Plaintiff also admits that no one told him they thought his tremor prevented him from practicing anesthesiology or questioned his ability to do his job because of the tremor. (*Id.* at 82.) Plaintiff did not believe that his tremor affected his ability to perform anesthesia (*Id.* at 83), and other doctors at GGH did not believe plaintiff's tremor limited him in the performance of his duties (DE # 30-7 at 5; DE # 30-12 at 3). Indeed, plaintiff claims that "there are two or three other Goshen physicians with similar problems." (DE # 32 at 4.) He does appear to allege, however, that he needs to use two hands to shave, comb his hair, and write legibly. (*Id.*)

*D. Plaintiff's Legal Claims and Proceedings*

On July 31, 2007, roughly six months after plaintiff's medical privileges at GGH expired, plaintiff filed a charge with the Equal Employment Opportunity Commission. (DE # 1 at 3.) He received a "right to sue" letter from the EEOC on September 15, 2007. (DE # 1-2.) He filed this complaint on December 12, 2007. (DE # 1 at 1.)

In his complaint, plaintiff alleges that the "action is brought under the Rehabilitation Act of 1973 . . . the Americans with Disabilities Act of 1990 . . . and the common law of the State of Indiana."[1] (DE # 1 at 1.) However, later in the complaint, plaintiff does not lay out various causes of action under these laws, instead just listing a "Discrimination Claim Against Defendants." (*Id.* at 2.) The general premise of his complaint is that plaintiff worked at GGH for 12 years and performed satisfactorily, but was "terminated" in February 2007 when his medical privileges at GGH were not renewed. (*Id.* at 2-3.) He then flatly alleges that "he was terminated because of his disability." (*Id.* at 3.)

After going through discovery, defendants have moved for summary judgment. (DE # 32.) In their motion, defendants provide a bevy of arguments in their defense, too many to list here. (*See* DE # 28.) Unfortunately, in his response brief, plaintiff does not directly respond to any of these arguments. (DE # 32 at 4.) Defendants then reiterate several of their arguments in reply. (DE # 33.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c). The party seeking summary

---

[1] As plaintiff fails to mention what claim he is bringing under Indiana common law, the court will not address any such potential claim.

judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. PROC. 56(c)).

Once the moving party has met its burden, the nonmovant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008) (citation omitted). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). Furthermore, when considering a motion for summary judgment, the court views the record and all reasonable inferences in a light most favorable to the nonmovant. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

Finally, the court notes that it must liberally construe *pro se* pleadings, like plaintiff's complaint and his response to defendants' motion for summary judgment. *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006).

**III. FAILURE TO SERVE DEFENDANTS**

To begin, plaintiff has failed to provide any proof that he has served defendants with process, as required by FEDERAL RULE OF CIVIL PROCEDURE 4(l). Defendants argue that they have not received service, and note that more than 120 days have passed since defendant filed his complaint. (DE # 28 at 34.) Plaintiff has failed to respond to this argument, beyond his vague claim that "it is appreciated" that the attorney for defendants "accepted service." (DE # 32 at 4.)

Defendants certainly have had notice of this lawsuit. They answered the complaint, have engaged in discovery and now filed a motion for summary judgment. However, all defendants have alleged via affidavits that they were not served with a summons and a copy of the complaint in this case. (DE # 30-7 at 7.) Further, defendants listed plaintiff's failure to properly serve them as a defense in their answers (*see, e.g.*, DE # 6 at 4), thereby preserving the argument. *See* FED. R. CIV. P. 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.").[2] The court has no record of summonses being returned executed in this case, and plaintiff's vague statement about defendant's attorney "accepting service" are insufficient. *See* Fed. R. Civ. P. 4(l) ("Unless service is waived, proof of service must be made to the court."). Further, defendants have repeatedly alleged that they did not waive service, and plaintiff offers no proof that he

---

[2] The court is uncertain why defendants waited to make this argument in their very lengthy summary judgment motion, when they could have filed a separate and quite simple motion to dismiss at any earlier point.

8

asked them to. *See* FED. R. CIV. P. 4(d) (listing requirements for requesting a waiver of service).

FEDERAL RULE OF CIVIL PROCEDURE 4(m) is quite clear on this issue– "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice . . . or order that service be made within a specified time." In this case, defendants have plainly not been served, far more than 120 days have past since plaintiff filed his complaint, and defendants moved to dismiss within their summary judgment motion. (*See* DE # 28 at 34-35.) It is true that plaintiff is *pro se*, but it is "well established that *pro se* litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). Therefore, this court has the option of either dismissing the case without prejudice, or ordering plaintiff to serve defendants within a specified time. *See* FED. R. CIV. P. 4(m). This is a matter within this court's discretion. *See Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002).

Considering that plaintiff has essentially failed to oppose defendants' substantive arguments for summary judgment, the court sees no point in ordering service, given that the case fails on the merits. That is, even if this case were to move forward, plaintiff could not survive summary judgment, or so it appears to this court based on the evidence and arguments presented to it. Thus, this case will be dismissed without prejudice, because, due to plaintiff's failure to serve defendants with process, the court

9

lacks personal jurisdiction over defendants. *United States v. Ligas*, 549 F. 3d 497, 500 (7th Cir. 2008) (a "district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process").

As it just explained, the court chooses to dismiss the matter, as not to prolong a lawsuit that lacks merit. The reason this case lacks merit is, as explained by defendants in their motion for summary judgment, that plaintiff has failed to present evidence demonstrating a genuine issue of material fact regarding his claims. However, for the sake of completeness, the court will address what it views as defendants' strongest arguments for summary judgment below.

## IV. UNNAMED DEFENDANT

Before this court begins addressing defendants' summary judgment arguments, it must first dismiss the unnamed defendant "Current President of the Medical Staff." Plaintiff is apparently referring to the current president of the medical staff at GGH, but this court cannot be certain. (*See* DE # 1 at 2.) What is certain, however, is that in the Seventh Circuit a plaintiff cannot file suit against an unnamed defendant and fail to amend the complaint to properly name that person. *See Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007) (dismissing unnamed defendant police officer when plaintiff failed to identify the defendant during discovery and was no record of serving the individual with process).

The court does not know whether plaintiff ever determined what the actual name was of the "current president of the medical staff." But the court can read the

docket in this case, which plainly shows that plaintiff never moved to amend his complaint to add the actual name of this defendant. As defendants note, the magistrate judge on this case gave plaintiff until May 12, 2008 to amend his complaint. (DE # 14.) Plaintiff thus had six months after filing his complaint where he could have amended it to add actual name of the current president of the medical staff. (*See* DE # 1.) But plaintiff failed to do so, and his pleadings have failed to demonstrate that he knows what this defendant's actual name is. *See Hall v. Norforlk S. Ry. Co.*, 469 F. 3d 590, 596 (7th Cir. 2006) (party not permitted to postdate amendment to complaint to add name of when "there is a lack of knowledge of the proper party") Thus, the court will dismiss defendant "Current President of the Medical Staff" from this action. *See Williams*, 509 F.3d at 402 (dismissing unnamed defendant instead of granting the individual summary judgment).

## V. PLAINTIFF'S REHABILITATION ACT CLAIM

Plaintiff's first identifiable claim is that the defendants violated the Rehabilitation Act of 1973. (DE # 1 at 1.) Defendants argue that a plaintiff alleging a violation of the Rehabilitation Act must provide evidence showing that the "program or activity" the plaintiff is suing receives "Federal Financial Assistance," and that plaintiff has failed to provide any evidence that any defendant receives such assistance. (DE # 28 at 21-22.) Plaintiff fails to respond to this argument.

Defendants are correct that a plaintiff claiming a violation of the Rehabilitation Act must show that the defendants receive federal financial assistance. *See* 29 U.S.C. §

794(a). In reviewing plaintiff's submissions, including his complaint and his response to the motion for summary judgment, the court has found no evidence, in fact, not even an allegation, that defendants receive federal financial assistance. Thus, it appears that plaintiff has failed to establish a baseline fact necessary to bring a claim under the Rehabilitation Act. *See id.*

## V. PLAINTIFF'S ADA CLAIM

Plaintiff's remaining claim is that defendants violated the ADA by firing him because of his tremor. (DE # 1 at 2-3.) Defendants raise a host of arguments to counter this claim (DE # 28 at 22-32), nearly all of which appear to be meritorious. But considering that the court is dismissing this case, it will restrict itself to addressing defendants' primary argument for summary judgment on plaintiff's ADA claim—that plaintiff was not actually employed by any of the defendants. (*Id.* at 23.)

Given plaintiff's allegations, in order for defendants to have potentially violated the ADA, they need to be considered to be employers under that law, and the plaintiff needs to have been their employee. *See* 42 U.S.C. § 12112(a) (prohibiting a "covered entity" from discriminating against a "qualified individual with a disability" in regard to "discharge of employees"); 42 U.S.C. § 12111(2) (covered entity defined as an employer). The ADA defines an "employee" as "an individual employed by an employer." 42 U.S.C. § 12111(4).

Unfortunately for plaintiff, he has admitted that he never had a written employment contract with any of the defendants, and that he didn't know what kind of

verbal agreement he had with any of the defendants. (DE # 30-2 at 20-21, 90-91.)
Furthermore, defendants have presented evidence that plaintiff agreed to provide anesthesiology services at GGH as an independent contractor, pursuant to GA, LLC's contract with GGH. (*See* DE # 30-7 at 3; DE # 30-9 at 2.) Thus, on the face of the evidence, it appears unlikely that plaintiff was an employee of any of the defendants.

This appearance is further cemented by analysis of relevant case law. In *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487 (7th Cir. 1996), the Seventh Circuit found that a plaintiff who worked as an anesthesiologist at a hospital was an independent contractor rather than an employee. *Id.* at 493-94. In making that determination, the court analyzed the following factors:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Id.* at 492 (citations omitted). Furthermore, the court explained that when considering these five factors, the "right to control" factor takes preeminence over the others. *Id.* Thus, "[i]f an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 439 (7th Cir. 1996).

Relying on these factors, the court concludes that plaintiff was not an employee of GGH or any other defendant. There is evidence in the record that defendant Poovendran and another doctor at GGH appear to have scheduled patients for plaintiff, and Poovendran attempted to exercise some control over how plaintiff performed his duties, reporting complaints about his behavior. However, in nearly all other respects plaintiff acted as an independent contractor. No one second-guessed or controlled his decisions on anesthesia– the specific manner in which plaintiff did his work. (DE # 30-7 at 4.) Plaintiff developed and maintained his own skills (DE # 30-7 at 4), going to medical school and completing a residency in anesthesia at a different hospital (DE # 30-2 at 3-7). While GGH maintained plaintiff's workplace, he himself had to maintain his licensing and pay for his own malpractice insurance. (DE # 30-7 at 5.) Furthermore, there is no evidence that plaintiff received compensation or benefits from defendants. Instead, defendants have shown that plaintiff billed his patients or their insurance companies directly, before paying GA, LLC to do it on his behalf. (DE # 30-7 at 4.)

There may be some evidence plaintiff could point to that might indicate he was less of an independent contractor, and more like an employee of GGH or the other defendants. But plaintiff has failed to identify this evidence, if it does exist. And it is not this court's job to scour the record on his behalf, even though he is a *pro se* litigant. *Corley v. Rosewood Care Center, Inc. of Peoria,* 388 F.3d 990, 1001 (7th Cir. 2004) (when plaintiff failed to cite record, the court "will not root through the hundreds of documents and thousands of pages that make up the record here to make his case for

him"). Given his failure to identify any evidence showing that he was employed by defendants (*see* DE # 32), it appears that, like the plaintiff in *Alexander*, plaintiff worked as an independent contractor, not an employee.

## VI. CONCLUSION

Defendant "Current President of the Medical Staff" is **DISMISSED** as a defendant. Defendants' motion for summary judgment (DE # 29), is **GRANTED IN PART** and **DENIED AS MOOT IN PART**. This case is **DISMISSED WITHOUT PREJUDICE** pursuant to FEDERAL RULE OF CIVIL PROCEDURE 4(m).

                                **SO ORDERED.**

**DATED:** January 23, 2009

                                s/James T. Moody
                                JUDGE JAMES T. MOODY
                                UNITED STATES DISTRICT COURT